**ALLEN, Collector of Internal Revenue for District of Georgia, v. OCEAN S. S. CO. OF SAVANNAH.**

No. 9947.

Circuit Court of Appeals, Fifth Circuit.

Nov. 12, 1941.

Samuel H. Levy and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and T. Hoyt Davis, U. S. Atty., of Macon, Ga., for appellant.

T. M. Cunningham, of Savannah, Ga., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff is a maritime company operating as a common carrier by water, a line of steamships between Savannah, New York and Boston. The suit was for the refund of taxes which had been collected from it under the Carriers Taxing Act of 1937,[1] the companion act to the Railroad Retirement Act of 1937,[2] on the theory that it was a company owned by, and performing for, a carrier subject to the act, services as defined in it, and was therefore, an employer under the act within the definition of Section 1(a).[3] "The term 'employer' means any carrier (as defined in Subsection (h)[4] of this section), and any company which is directly or indirectly owned or controlled by one or more such carriers or under common control therewith, and which operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad[5] * * *." Plaintiff admitted that its stock was owned by a carrier subject to the act but denied that it was "a company which performed services or handled property in connection with the transportation of passengers or property by railroad." It prevailed below

---

[1] 50 Stat. 435, 45 U.S.C.A. § 261 et seq.; 26 U.S.C.A.Int.Rev.Code § 1500 et seq.

[2] 50 Stat. 307, 45 U.S.C.A. § 228a et seq.

[3] 26 U.S.C.A.Int.Rev.Code, § 1532 (a); 45 U.S.C.A. § 261(a).

[4] "The term 'carrier' means an express company, sleeping-car company, or carrier by railroad, subject to part I of the Interstate Commerce Act." Subsection (h), Section 1532, Int.Rev.Code, 26 U.S. C.A.; 45 U.S.C.A. § 261(i).

[5] "The term 'employer' shall also include railroad associations, traffic associations, tariff bureaus, demurrage bureaus, weighing and inspection bureaus, collection agencies and other associations, bureaus, agencies, or organizations controlled and maintained wholly or principally by two or more employers as hereinbefore defined and engaged in the performance of services in connection with or incidental to railroad transportation."

upon this contention, and in an opinion[6] fully setting out the findings of fact on which he based it, the district judge gave plaintiff judgment. We will not therefore, attempt a full statement of the facts. But referring to that opinion for their detail, we will, in the course of this one, briefly set out such of them as seem controlling.

The first fact to be noticed is that what appellant in his brief presents as an obvious and necessary conclusion to be drawn from the language of the act has only recently taken on that complexion. When the act was first adopted and appellee's general counsel inquired of the Social Security Board, the Railroad Retirement Board and the Commissioner of Internal Revenue, whether in their opinion, the company fell under Title 8 of the Social Security Act, 42 U.S.C.A. § 1001 et seq., or under the Carriers Taxing Act, the Company was advised by the Chairman of the Railroad Retirement Board,[7] that it was not an employer under the Carriers Taxing Act. A year later the Commissioner of Internal Revenue gave it, as his opinion, that plaintiff was under the act. Nearly a year later still, the general counsel of the Railroad Retirement Board, in a lengthy opinion, took the Commissioner's view, while in an opinion equally lengthy, filed a little later, the general counsel of the Social Security Board disagreed with the Commissioner. It is thus quite apparent, with different agencies of the government in a contest with each other over which shall take jurisdiction over and administer upon a citizen, under a statute designed to advise him at once of his duties and his rights, that it is only in a Pickwickian sense that appellant declares that the terms of the invoked act quite plainly bring appellee under it. More it is a strong argument for giving the statute a broad common-sense construction rather than a narrow one, sounding in mere logomachy. We therefore approach a decision of the question, with the serenity born of the knowledge that for a decision on merely logomachic grounds, reasons have been and may again, be advanced for either construction, and with a determination born of that same knowledge to decide the question on broader considerations than some of the purely legalistic ones advanced, in the lengthy opinions of the counsel for the two bureaus, and in the brief the commissioner has filed here.

In that view the fact that from the date of its incorporation in 1872, until now, the stock of appellee, subject to a collateral trust mortgage, has been owned first by the Central Railroad and Banking Company of Georgia, next by its successor, the Central of Georgia Railway Company, and is now owned by Pollard and Lovett, trustees of Central Railway, is an important one. But as important is the fact that notwithstanding all these changes of ownership and management of the railway company, appellee has not been and is not now affected by them, but has, during all of the period, continued to be and is now, oper-

---

6 Ocean Steamship Company v. Allen, D.C., 36 F.Supp. 851.

7 Mr. T. M. Cunningham, Vice-President & General Counsel, Ocean Steamship Company of Savannah, Savannah, Georgia.

"Dear Sir: Reference is made to your letter of July 10, 1937, inquiring whether the Ocean Steamship Company of Savannah is an 'employer' within the meaning of the Railroad Retirement Act of 1937.

"The information submitted by you, and the information secured from the Board's independent investigation, discloses that the Ocean Steamship Company of Savannah was organized in 1872 by the Central Railroad and Banking Company of Georgia, predecessor of the Central of Georgia Railway Company; that since that time the steamship company has been owned and controlled by the latter-named companies in succession; that it has been operating steamships carrying freight and passengers between Savannah, Georgia, and New York and Boston; and that it is and has been participating in joint through ocean and rail rates with various carriers by railroads in the transportation of passengers or property and that it is and has been engaged also in local port to port traffic.

"The Board is therefore of the opinion that the Ocean Steamship Company of Savannah is engaged in a water transportation service which is independent of and not merely accessorial to rail transportation and that although the company is owned and controlled by a carrier by railroad, that it is not operating any equipment or performing any service in connection with the transportation of passengers or property by railroad as contemplated by Section 1 (a) of the Railroad Retirement Act of 1937; that it is not an 'employer' within the meaning of the Act; and that service to it is not creditable toward annuities under such Act.

Yours very truly,
(S) · Murray W. Latimer."

ated by its own officers and directors, and entirely, separately and independently of the railway company.

A further important, indeed a controlling fact, is that the freight traffic, whose handling appellant relies on as bringing appellee within the act, is freight delivered on through rates controlled and prescribed by traffic to which the participating carriers are parties, these tariffs filed and published in accordance with the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. Such tariffs state the rate and the gross sum and do not show its component parts or how it is to be divided between those participating, in rendering the transportation service. The service to be rendered by each carrier in the through transportation, and the division of the through rate among them is determined by agreements or conventional arrangements which also determine the point and the manner of delivery. This being so, the details with which the record and the briefs are so much taken up, of how and by whom each particular step in the carriage is effected become wholly unimportant. For each transportation step when performed by carrier or steamship is performed for itself as its own transportation and not by it as agent and for another, as the transportation of that other. What is important is that though appellee's stock is owned by the Central Railway, appellee is in no sense and at no time its agent. In no sense and at no time does it operate any equipment or facility for the railway or perform any transportation service for it, or receive, deliver, or handle for it, property being transported by the railway. It operates its own equipment and facilities, performs transportation service for itself, and for itself handles the property delivered to it by, and which in turn it delivers to, carriers by rail. In this view, we find it wholly unimportant to consider or differentiate the numerous classifications for the purpose of taxation under the act, cited to us, which the Railroad Retirement Board has made, or the rulings and orders of the Commission and the decisions of the courts on other and different statutes, also cited. We find it important only to determine whether upon a consideration of the language of the invoked act in the light of its relation to the Special System of Social Security for the railroad industry, and the relation of that system to the System of Social Security as a whole, they more reasonably support the view urged upon us by appellant or that urged by appellee. Appellant's view, stripped to its base, is that appellee, though engaged exclusively in operating a steamship line between Savannah, New York and Boston, is intended to be and is made subject to the Special Railroad, instead of the General, Social Security System, merely because it is owned by a railroad, participates in through routes and joint rates with its parent company and other railroads, and as a part of a through transportation, handles freight to and from the railroad carriers with which it has arrangements. Appellee's view simply stated is that a steamship company carrying by water and not by rail, is a part not of the railroad but of the maritime industry of the country, and that it is an unreasonable construction of the terms of the act, to hold that appellee is included within them.

It is quite apparent that the construction appellant contends for will result in cutting across industrial lines and in absorbing into the special railroad insurance system, some parts of other industries because those parts happen to be owned by railroads, while that for which appellee contends, will have no such effect. That consideration alone should, we think, give us pause in construing, indeed should prevent our construing the act as appellant does, unless its language does not reasonably admit of any other result.

Certainly the Congressional intent to include water carriers cannot be drawn from the fact, if it be a fact, which appellant makes so much of, that water carriers, in addition to performing purely steamship services, perform for a charge and for themselves, transportation service which the railroad carriers could have undertaken but left to the water carriers to perform. For, if this were the simple criterion, Congress could easily and would have said so, instead, as it did, of confining the application of the act to rail carriers and companies owned by them which performed a part of their transportation service for them. Appellant realizing this difficulty, in the way of his construction, devotes a good part of his brief to arguing that the services performed by appellee are performed not for itself but as agent for railroad carriers. But on the record this will not at all do. Not a word of it in the slightest tends to support this view. All of it leads directly to the contrary conclusion.

The judgment was right. It is affirmed.