## UNITED STATES v. PACIFIC ELECTRIC RY. CO.

### No. 11211.

Circuit Court of Appeals, Ninth Circuit.

Nov. 4, 1946.

Sewall Key, Acting Asst. Atty. Gen., J. Louis Monarch, Melva M. Graney, and Eugene E. Beyer, Sp. Asst. to Atty. Gen., and Charles H. Carr, U. S. Atty., E. H. Mitchell, and George M. Bryant, Asst. U.S. A⁺tys., all of Los Angeles, Cal., for appellant.

Frank Karr, C. W. Cornell, E. L. H. Bissinger, and E. D. Yeomans, all of Los Angeles, Cal., for appellee.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

For the years 1937, 1938, 1939 and 1940, excise taxes aggregating $33,062.45 were paid[1] by appellee, Pacific Electric

[1] The payments were as follows: $5,-967.19 on November 30, 1937; $2,060.42 on January 31, 1938; $1,901.91 on April 30, 1938; $1,886.41 on July 30, 1938; $1,890.10 on October 31, 1938; $1,913.-94 on January 31, 1939; $1,944.15 on May 31, 1939; $1,966.66 on August 31, 1939; $1,986.17 on November 30, 1939; $2,020.34 on February 29, 1940; $2,293.-93 on May 31, 1940; $2,378.38 on October 31, 1940; $2,418.40 on November 29 1940; $2,434.45 on February 28, 1941. ·

Railway Company, a corporation, to Nat Rogan, Collector of Internal Revenue for the Sixth Collection District of California. Alleging that the taxes were erroneously collected, appellee claimed a refund and, its claim having been denied, brought a suit for the recovery of the taxes. Rogan having died, the suit was brought against appellant, the United States.[2] Appellant answered, a trial was had, an opinion was filed,[3] and a judgment was entered in appellee's favor. From that judgment this appeal is prosecuted.

The taxes were collected under what is now subchapter B (§§ 1500–1537) of chapter 9 of the Internal Revenue Code, 26 U.S. C.A.Int.Rev.Code, §§ 1500–1537,[4] the pertinent provisions of which are found in §§ 1520 and 1532.

Section 1520 provides: "In addition to other taxes, every employer shall pay an excise tax, with respect to having individuals in his employ, equal to [specified] percentages of so much of the compensation as is not in excess of $300 for any calendar month paid by him to any employee for services rendered to him after December 31, 1936: Provided, however, That if an employee is paid compensation by more than one employer with respect to any such calendar month, the tax imposed by this section shall apply to not more than $300 of the aggregate compensation paid to said employee by all said employers with respect to such calendar month, and each such employer shall be liable for that proportion of the tax with respect to such compensation which his payment to the employee with respect to such calendar month bears to the aggregate compensation paid to such employee by all employers with respect to such calendar month."

Section 1532 provides: "As used in this subchapter—

"(a) Employer.—The term 'employer' means any carrier (as defined in subsection (h) of this section), and any company which is directly or indirectly owned or controlled by one or more such carriers or under common control therewith, and which operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, * * *

"(b) Employee.—The term 'employee' means any person in the service of one or more employers for compensation * * *

"(g) Company.—The term 'company' includes corporations, associations, and joint-stock companies.

"(h) Carrier.—The term 'carrier' means an express company, sleeping-car company, or carrier by railroad, subject to part I of the Interstate Commerce Act.

"(i) Person.—The term 'person' means an individual, a partnership, an association, a joint-stock company, or a corporation."

The taxes here involved were paid and collected upon the theory that appellee was an employer as defined in subsection (a) of § 1532, and that appellee and Los Angeles Railway Corporation, hereafter called Los Angeles Railway, had in their employ in 1937, 1938, 1939 and 1940 individuals, hereafter called the motor coach employees, one-half of whose aggregate compensation was paid by appellee. The taxes were based upon, and were paid and collected with respect to, one-half of such aggregate compensation and hence were one-half of what they would have been had appellee been the sole employer of the motor coach employees.[5]

Appellee conceded that it was an employer as defined in subsection (a) of § 1532,[6] but contended that the motor coach employees were not employees of appellee and Los Angeles Railway or either of them, but were employees of Los Angeles Motor Coach Lines; and the trial court so held.

[2] See § 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20).

[3] Pacific Electric R. Co. v. United States, D.C.S.D.Cal., 64 F.Supp. 796.

[4] Derived from the Carriers Taxing Act of 1937, 45 U.S.C.A. §§ 261–273.

[5] See § 1520, supra.

[6] In its suit to recover the taxes, appellee alleged that it was "a railroad corporation and an 'employer' as defined in and subject to the provisions of the Railroad Retirement Act of 1937 and to chapter 9, subchapter B, of the Internal Revenue Code of the United States of America, formerly the Carriers Taxing Act of 1937."

That holding is challenged by this appeal. The question is: Whose employees were the motor coach employees?

It was stipulated that appellee "now[7] operates and at all times since January 1, 1937, has operated jointly with * * * Los Angeles Railway certain motor coach routes in the City of Los Angeles and the territory adjacent thereto for the transportation of passengers by motor coach, which said routes are for convenience and for the purpose of identification designated as Los Angeles Motor Coach Lines;" that "said Los Angeles Motor Coach Lines is not and has never been a corporation, but is and has at all times been a name given for the purpose of identification to the joint operations of [appellee] and * * * Los Angeles Railway[8] conducted pursuant to certificates of public convenience and necessity issued to them by the Railroad Commission of the State of California;" and that "said operations have at all times been conducted in accordance with" an agreement of appellee and Los Angeles Railway dated August 15, 1923, and agreements supplementary thereto.

A copy of the agreement of August 15, 1923, was attached to the stipulation. By that agreement, appellee and Los Angeles Railway appointed their vice presidents "as their joint agents, hereinafter called directors, * * * to aquire, maintain and operate motor busses[9] for the parties hereto, and to do such things as are necessary, suitable, convenient or proper in the premises." The agreement provided:

"Said operation[10] shall constitute and be only an agency or joint department, which is hereby created, of the parties hereto, but may for convenience be designated as 'Los Angeles Motor Bus Company,'[11] but same shall not be or constitute a partnership, either of said agents, or of their principals, the parties hereto.

"It is agreed between the parties hereto that each party will acquire and own and furnish for the use of said agency or department one-half of the equipment required for the operation of the service and shall furnish from time to time one-half of capital necessary to be advanced to said agency for the support and conduct of said department to their mutual benefit and advantage * * *

"That * * * each of the parties * * * shall and will, at all times during operation hereunder, bear, pay and discharge, equally between them, all rents and other expenses that may be required for the support and management of the said business.

"That the said directors[12] shall conduct said business through the following officers: A manager, an assistant manager, a superintendent of equipment, together with such subordinate officers and employees as may from time to time be authorized by the manager and assistant manager * * *

"That there shall be kept * * * just and true accounts, wherein there shall be entered and set down all money by said principals,[13] or either of them, received, paid, laid out and expended in and about the said business, also all the goods, commodities, equipment or other property by them, or either of them, bought or sold by reason or on account of the said business * * * The gross receipts of said department shall be deemed gross receipts and property directly of said principals and shall be divided equally between said principals, and the gross outlays thereof likewise.

"That the said principals, once in each year, * * * shall make, yield and render, each to the other, a true, just and perfect inventory and account, of all the profits and increase by them, or either of them, made, and of all loss by them, or

---

[7] On October 13, 1944—the date of the stipulation.

[8] Other names given to these "operations" were "Los Angeles Motor Bus Company" and "Los Angeles Motor Coach Company."

[9] Now called motor coaches.

[10] This "operation" and the "operations" mentioned in the stipulation were one and the same.

[11] Other designations of this "operation" were "Los Angeles Motor Coach Company" and "Los Angeles Motor Coach Lines."

[12] The two joint agents (vice presidents) of appellee and Los Angeles Railway.

[13] Appellee and Los Angeles Railway.

either of them, sustained; and also of all payments, receipts and disbursements, and of all other things by them made, received, disbursed, acted or suffered in their said business; and the said account being so made, they shall and will clear and adjust, each to the other at the time, their just share of the profit so made as aforesaid.

"That all gains, profits and increase that shall come, grow or arise, from or by means of the said joint department, shall be divided between [the said principals], share and share alike, and all loss that shall happen, by bad debts or otherwise, shall be borne and paid equally between them.

"That at the termination of their joint operation hereunder, the said principals, each to the other, shall and will make a true, just and final account of all things relating to said department, and in all things truly adjust the same; and that all and every stock and stocks, as well as the gains and increase thereof, which shall appear to be remaining, either in money, goods, equipment or other property, debts or otherwise shall be divided between them, share and share alike.

"That neither of the parties hereto shall, without the consent of the other, previously obtained in writing, sell or assign [its] share or interest in the subject matter hereof, or any of the properties or rights being used or enjoyed by said department, to any person or persons whatsoever.

"This agreement and the agency herein created shall continue until terminated at any time by either party hereto giving six months written notice to the other party of its intention to terminate the said agreement."

It was further stipulated that appellee and Los Angeles Railway, through their joint agents, hired employees in the "operations designated as Los Angeles Motor Coach Lines," regulated the condition of their employment and dismissed such employees, and that the taxes here involved were paid and collected "on account of employees[14] employed in said operation designated as Los Angeles Motor Coach Lines" and "were based upon one-half of the total compensation paid to [them], which one-half of said total compensation was, in the conduct of said operations, charged to and borne by [appellee.]"

The stipulated facts show that the motor coach employees were joint employees of appellee and Los Angeles Railway and were not employees of Los Angeles Motor Coach Lines. Los Angeles Motor Coach Lines was not an individual, a partnership, an association, a joint-stock company or a corporation. It was not a legal entity, but was merely a joint activity of appellee and Los Angeles Railway—an activity which the agreement of August 15, 1923, characterized as a joint operation and as a joint department or agency, and which the stipulation characterized as joint operations.

Appellee contends that Los Angeles Motor Coach Lines could be an employer without being a "legal entity generally recognized by law," but cites no case supporting this contention. In Railroad Retirement Board v. Duquesne Warehouse Co., 326 U.S. 446, 66 S.Ct. 238; Allen v. Ocean Steamship Co., of Savannah, 5 Cir., 123 F.2d 469; Walling v. Baltimore Steam Packet Co., 4 Cir., 144 F.2d 130; and Interstate Transit Lines v. United States, D.C.Neb., 56 F.Supp. 332, cited by appellee, the employers (Duquesne Warehouse Company, Ocean Steamship Company, Baltimore Steam Packet Company and Interstate Transit Lines) were corporations and hence were "legal entities recognized by law." These cases obviously are not in point.

The Railroad Retirement Board has held that persons employed, as the motor coach employees were employed, in the joint activity called Los Angeles Motor Coach Lines were joint employees of appellee and Los Angeles Railway and were, to the extent of, and with respect to, one-half of their aggregate compensation, employees of appellee within the meaning of the Railroad Retirement Act of 1937, 45 U.S.C.A. §§ 228a–228s, and the Railroad Unemployment Insurance Act, 45 U.S.C.A. §§ 351–367.

---

[14] These were the motor coach employees.

The Social Security Board has held that persons so employed were employees of Los Angeles Motor Coach Lines within the meaning of the Federal Insurance Contributions Act, subchapter A (§§ 1400–1432) of chapter 9 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, §§ 1400–1432.

The California Employment Commission and the Superior Court of Los Angeles County, California, have held that persons so employed were employees of Los Angeles Motor Coach Lines within the meaning of the California Unemployment Insurance Act.

However, we are not here concerned with the Railroad Retirement Act, the Railroad Unemployment Insurance Act, the Federal Insurance Contributions Act or the California Unemployment Insurance Act, Gen. Law, Act 8780d. We are here concerned with subchapter B (§§ 1500–1537) of chapter 9 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, §§ 1500–1537. We hold that the motor coach employees were joint employees of appellee and Los Angeles Railway and were, to the extent of, and with respect to, one-half of their aggregate compensation, employees of appellee within the meaning of subchapter B, and that the taxes here involved were properly collected.

Judgment reversed.