**SPRAGUE et al. v. WOLL, U. S. Atty. (INTERSTATE COMMERCE COMMISSION et al., Interveners).**

**No. 7674.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1941.

768

Robert E. Quirk, of Washington, D. C., B. P. Alschuler, and Glenn T. Johnson, both of Aurora, Ill., and Frederick E. Stout, of Chicago, Ill., for appellants.

Leo J. Hassenauer, of Chicago, Ill., and Daniel W. Knowlton, Nelson Thomas, and Robert L. Stern, all of Washington, D. C., Thurman Arnold, Asst. Atty. Gen., and J. Albert Woll, U. S. Atty., of Chicago, Ill., for appellees.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioners, receivers for the Chicago, Aurora and Elgin Railroad Company, applied to the District Court for an injunction against enforcement of the Railway Labor Act by the United States Attorney. The Interstate Commerce Commission and certain unions intervened. The complaint was based upon the averment that an order of the Commission to the effect that the railroad is not exempt from but is subject to the Railway Labor Act is unlawful, arbitrary and capricious and unsupported by substantial evidence. The court found to the contrary and dismissed the complaint; the receivers appeal.

The Act, 45 U.S.C.A. §§ 151–163, exempts certain railways from the definition of carriers subject to the act in the following proviso: " * * * Provided, however, That the term 'carrier' shall not include any street, interurban, or suburban electric railway, unless such railway is operating as a part of a general steam-railroad system of transportation, but shall not exclude any part of the general steam-railroad system of transportation, now or hereafter operated by any other motive power. The Interstate Commerce Commission is hereby authorized and directed upon request of the Mediation Board or upon complaint of any party interested to determine after hearing whether any line operated by electric power falls within the terms of the proviso." Upon due hearing, the Commission found that the railroad did not fall within the exemption and that it was "something more than an interurban electric railway" and properly a part of the general steam-railroad system of transportation.

Our function is defined by the Supreme Court in Shields v. Utah Idaho Central Railroad Company, 305 U.S. 177, 59 S. Ct. 160, 83 L.Ed. 111, as follows: "The condition which Congress imposed was that the Commission should make its determination after hearing. There is no question that the Commission did give a hearing. Respondent appeared and the evidence which it offered was received and considered. The sole remaining question would be whether the Commission in arriving at its determination departed from the applicable rules of law and whether its finding had a basis in substantial evidence or was arbitrary and capricious. That question must be determined upon the evidence produced before the Commission."

The undisputed facts follow. The railroad is an electric railway. Its main line extends from Chicago through Wheaton to Aurora and Elgin with short branches to other towns. Total mileage, with yards and sidings, is 117.22. The right-of-way is private and does not run over city streets. The company has 71 freight team and industrial tracks with a freight-car capacity of 976. A substantial portion of the line operates under standard railroad block-signal system. For about six miles within the city of Chicago the road operates over an elevated structure. Except for this and an inconsiderably short mileage at the other end of the line at Aurora, standard steam-railroad equipment may be and is operated over the tracks. Sixty miles are laid with 100-pounds rail, the balance with 80 or more pounds rail. There are two curves of 100 feet radius on the main line, but these are near the end of the line in Aurora. No grade exceeds two per cent. The electric locomotives can haul freight trains of from 12 to 28 cars, the trains usually being 6 to 18 cars long. Inspections of the locomotives are reported to the Commission under the Locomotive Inspection Act, 45 U.S.C.A. § 22 et seq. The company operates also baggage-type motor cars which haul from 4 to 7 cars of freight each.

Passenger trains usually contain 2 or 3 cars but sometimes as many as 8. Carload freight is handled by both electric locomotives and baggage-type motor cars in standard steam-railroad cars which are repaired in its own shops.

The company has track connections for interchange of freight cars with 9 steam railroads and through its connection with 2 steam belt lines, it may deliver to or receive freight from every railroad operating in and out of Chicago. Upon its own lines it furnishes switching service to some 35 different industries. It participates in 207 tariffs as initial carrier and in 766 joint tariffs as intermediate or delivering carrier. These tariffs cover movement of interstate freight of all kinds to, from and between all sections of the United States and Canada. It maintains freight solicitors in Kansas City, Missouri, Lakewood, Ohio, Washington, D. C. and Portland, Oregon.

In 1937 it did a state and interstate freight business aggregating $168,000, handling 8,237 carloads of which 3,907 were intrastate and 4,330 interstate. Of these it handled 3,664 as intermediate carrier; 7,142 were exchanged with other lines. The company derives considerably greater revenue from its passenger traffic operating daily into and out of Chicago than from its freight business.

From these and other facts presented the Commission concluded that the railroad is engaged in the general transportation of freight; that it is immaterial whether the revenue from freight is greater than that from its passenger traffic; that handling of freight in standard equipment similar to that used by steam railroads, which it freely interchanges with the steam railroads for transportation to or from points on their lines, a considerable portion thereof being in interstate or foreign commerce and participating in joint rates with steam railroads for interstate transportation demonstrate activities possessing more "of the characteristics of a commercial railroad operated by electric power" than an "interurban" as that term is used in the exemption provision of the statute; that the traffic of the carrier is not local in character or largely dissociated from the steam railroads of the country; that the railroad has all of the characteristics of a commercial railroad operated by electric power and that the receivers are operating the line as more that a "street, suburban or interurban electric railway" and actually as a part of the general steam-railroad system of transportation so as to exclude it from exemption proviso.

The District Court believed that the facts related, together with others in the record, furnished substantial evidence to support the finding and order of the Commission.

Similar issues have arisen in Texas Electric Ry. Co. v. Eastus, D.C., 25 F.Supp. 825; affirmed 308 U.S. 512, 60 S.Ct. 134, 84 L.Ed. 437; Sprague, Receiver v. Woll, 7 Cir., 122 F.2d 128; Chicago South Shore & South Bend R. Co. v. Fleming, 7 Cir., 109 F.2d 419, in each of which the order of the Commission has been approved. What is said in each of those opinions seems to us of pertinent and controlling effect here. In Texas Electric R. Co. v. Eastus, D.C., 25 F.Supp. 825, the court at some length pointed out the facts supporting the finding and order of the Commission and approved its conclusion. The decision was affirmed by the Supreme Court without opinion, 308 U.S. 512, 60 S.Ct. 134, 84 L.Ed. 437, upon Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111 and other cases cited. The facts here we believe are not to be distinguished from those there. The Texas' percentage of freight revenue was greater than that here but the volume of freight business there was less than that of the Aurora. The freight revenue per mile of the Aurora is greater than that of the Texas case. The number of cars handled as intermediate carrier between steam-lines by the Aurora exceeds that of the Texas. The Aurora participates in 950 tariffs as compared to 247 for the Texas. The rails of the Aurora are heavier than those of the Texas. None of these facts is sufficient to distinguish this from the Texas case or to make applicable any rule of law other than that announced there. Consequently affirmance of that decision by the Supreme Court is decisive of the issue presented to us.

We further agree with the Commission's conclusion that the railroad is operating as a part of the general steam-railroad system of transportation. It is not necessary, of course, that there be financial connection between the electric and the steam railroads to bring a railroad company within the statute. It is the actual physical connection which is of persuasive weight. If there were no physical connections, there could be no uninterrupted interstate carri-

age. Where two carriers are physically joined continuous movement of freight follows. Such freight business has no connection with passenger business, is independent thereof and arises from a separate and distinct line of carrier endeavor. The second clause of the exemption provides that it shall not apply to any part of "the general steam-railroad system of transportation now or hereafter operated by any other motor power."

Inasmuch as the finding and order of the Commission were entered after complete hearing upon substantial evidence which supports them and the Commission has committed no legal error in its interpretation of the statute, as construed by the Supreme Court, the judgment of the District Court is affirmed.