**NATIONAL LABOR RELATIONS BOARD v. NORTHERN TRUST CO. et al.**

**SAME v. AMERICAN NAT. BANK & TRUST CO. OF CHICAGO et al.**

Nos. 8657, 8667, 8652, 8685.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1945.

Rehearing Denied April 5, 1945.

Lewis F. Jacobson, David Silbert, and Sidney C. Nierman, all of Chicago, Ill., for American Nat. Bank & Trust Co. of Chicago.

John E. MacLeish, Leland K. Neeves, and Harold D. Burgess, all of Chicago, Ill., for Northern Trust Co.

Malcolm F. Halliday, Charles F. McErlean, Alvin J. Rockwell, Gen. Counsel, and Thomas B. Sweeney, Atty., National Labor Relations Board, all of Washington, D. C., for National Labor Relations Board.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Pursuant to § 11(2) of the National Labor Relations Act, 29 U.S.C.A. § 161(2), the District Court entered orders requiring appellants, The Northern Trust Company, American National Bank and Trust Company, American National Safe Deposit Company, and certain officers of the banks, to obey certain subpoenas duces tecum and ad testificandum. These subpoenas had been issued by the National Labor Relations Board, hereinafter called the Board, under § 11(1) of the Act, 29 U.S.C.A. § 161(1), and were enforced in slightly modified form.

There is no significant difference in the legal questions presented by the two appeals. The facts are very similar; hence a condensed version of the important facts will suffice.[1]

The Union, Local 240 of the Protective Service Employees of Chicago, affiliated

---

[1] We recognize that this is a slight oversimplification, and that it is possible that as the proceeding develops differences may arise as to questions regarding certain appellants. However, these differences have not been stressed here. Confining ourselves strictly to the issues herein raised, we feel they are not significant.

with the Building Service Employees International Union (A. F. of L.), filed a petition with the Board for investigation and certification of representatives pursuant to § 9(c) of the Act, 29 U.S.C.A. § 159(c). The petition alleged that certain employees of the bank, working as armed guards, constituted an appropriate unit for the purposes of collective bargaining; that the bank had refused to recognize the Union as representative of the employees until certified by the Board as such representative; and that the question concerning representation was a question affecting commerce within the meaning of the Act.

In accordance with its customary practice the Board instituted a preliminary investigation to determine whether the petition should be entertained. During the investigation a Board agent requested the bank to furnish certain information with respect to its operations and the employees in the alleged appropriate unit. The bank refused to supply the information. The Board then issued subpoenas specifying certain books and records and witnesses who were ordered to testify at a hearing held by the Board in Chicago before a trial examiner. This hearing was conducted as part of the Board's investigation under § 9(c) and the bank was represented by counsel at the hearing. The witnesses subpoenaed did not appear nor did the bank produce the documents subpoenaed. Counsel for the bank protested that it was not subject to the Act because no question affecting commerce within the meaning of the Act and the Constitution was involved and that the unit requested by the Union was not appropriate for collective bargaining; counsel stated that it and its officers would not comply with the subpoenas. Nor did the bank submit a statement in lieu of such records, though requested to do so. Thereupon the trial examiner adjourned the hearing pending the filing of an application with the court for an order requiring obedience to the subpoenas.

The District Court issued an order requiring appellants to show cause why the Board's application should not be granted. Appellants filed a joint and several answer raising many of the contentions raised on these appeals. After oral argument and the filing of briefs, the court modified slightly the Board's order and entered the instant orders requiring obedience to the subpoenas. To reverse the orders, these appeals and cross-appeals are prosecuted.

The relevant parts of the statute are set out below.[2]

The parties to these appeals have variously stated the issues involved. The fundamental issue is, in our view, what

---

[2] "Investigatory Powers

"Sec. 11. For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by section 9 and section 10—

"(1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. Any member of the Board shall have power to issue subpenas requiring the attendance and testimony of witnesses and the production of any evidence that relates to any matter under investigation or in question, before the Board, its member, agent, or agency conducting the hearing or investigation. * * *

"(2) In case of contumacy or refusal to obey a subpena issued to any person, any District Court of the United States * * within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof * * *" 49 Stat. 455, 456.

"Representatives and Elections

"Sec. 9. (a) * * *

"(b) The Board shall decide in each case * * * the unit appropriate for the purposes of collective bargaining * * *.

"(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertin [ascertain] such representatives. * * *" 49 Stat. 453.

tribunal shall make the initial determination that a question affecting commerce has or has not arisen. Appellants argue that upon application to the District Court for enforcement of the subpoenas, that court must necessarily decide that such a question has arisen before entering an order of enforcement. The Board says, and the court held, that such determination must be made in the first instance by the Board.

A condensed paraphrase of the District Court's reasoning is that the Act shows conclusively that Congress intended to empower the Board to have its order compelling obedience to the subpoenas enforced without first showing that the bank is engaged in interstate commerce or that its activities affect commerce; that to hold otherwise would be to put upon the court the burden of investigation that Congress intended should be borne by the administrative body; that the Board would dismiss the Union's petition if it found that no question affecting commerce was involved; and that even if the Board should find that the bank's business was of such a character as to make it subject to the Act, the Board could make no order that could be enforced without action by a court, where the bank's rights will be fully protected.

Appellants contend that by oversight or design the Act treats the scope of the Board's powers under § 9(c) quite differently from its powers under § 10(a), 29 U.S.C.A. § 160(a). They argue that unlike § 10(a) which gives exclusive power to the Board to determine, in the first instance, whether the employer is subject to the Act, § 9(c) contains no equivalent provision.

To evaluate appellants' contention, we first examine the words of the statute. This shows that § 9(c) provides that "Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate * * *." Section 10(a) states that "The Board is empowered * * * to prevent any person from engaging in any unfair labor practice * * * affecting commerce. This power shall be exclusive, * * *." It is true that the latter says the Board's power is exclusive while the former does not, but this makes no difference because the plain mandate of § 9(c) is that the Board, not the court nor any other body, shall investigate. Moreover, there is adequate opportunity for judicial review of any order which the Board may enter under § 10(a) and likewise any order resulting

from the Board's ultimate action after investigation under § 9(c). In both cases, to enforce obedience the Board must apply to a court. Indeed, under § 9(c) the investigation is merely preliminary. Furthermore, and this is very significant, § 10(a) grants the Board power only as to practices which affect interstate commerce, and § 9(c) provides the same basis for Board action, namely, practices (or in the literal words of the statute, question [s]) affecting commerce. Thus the yardstick for determining whether the Board has jurisdiction under both sections is the existence of interstate commerce. Under § 10(a) it is settled that the Board, not the court, is the proper tribunal to make the initial determination of whether the practices affect such commerce. National Labor Relations Board v. Barrett Co., 7 Cir., 120 F.2d 583; Myers v. Bethelehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646. Since the yardstick is the same under § 9(c), no good reason appears why the Board should not make the initial determination of the existence of a question affecting interstate commerce in proceeding under that section. Not only consistency of construction of the two parts of the same statute but also numerous other considerations dictate this conclusion. For example, the opposite holding would oust the Board of jurisdiction to determine whether it has jurisdiction and thus violate the will of Congress as expressed in the statute. It would require the Board to come into the District Court and affirmatively prove that a question affecting interstate commerce had arisen before it (the Board) had had the chance to investigate whether such a question actually existed. To our way of thinking, that would be putting the cart before the horse. The Myers and Newport News cases, supra, make it plain that the initial determination of jurisdiction by the Board may not be enjoined, and obviously this prohibition would become meaningless if judicial examination of the same question were permitted in a subpoena enforcement action.

Appellants have made a valiant effort to distinguish Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, but while they have pointed out certain factual differences, they have failed to demonstrate the inapplicability of the principle therein enunciated.

Because they lack persuasiveness, appellants' other arguments will be disposed of with little discussion. The constitutionality of the Act both substantively and procedurally and, in particular, § 9 thereof, is well settled. National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251.

We refuse to lay down a blanket ruling, as appellants in effect contend that we should, that as a matter of law no bank can be engaged in interstate commerce. National Labor Relations Board v. Bank of America Nat. Trust & Savings Ass'n, 9 Cir., 130 F.2d 624; American National Bank of St. Paul v. National Labor Relations Board, 8 Cir., 144 F.2d 268; cf. Polish National Alliance v. National Labor Relations Board, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509.

In arguing that even if this bank is engaged in interstate commerce, which is conceded only for purposes of this argument, the activities of the employees involved did not affect commerce, appellants ask this court, as they did the District Court, to make the initial determination which has been committed by Congress to the Board. We express no opinion on the merits of the arguments advanced, but hold simply that they should be made in the first instance to the Board. Section 9(c) specifically authorizes the Board to investigate and certify bargaining agents and § 9(b) empowers it in each case to determine the appropriate unit for purposes of collective bargaining, 29 U.S.C.A. § 159(b), (c). As part of this investigation or as a result thereof, the Board must necessarily determine whether the bank's operations affect commerce within the meaning of § 2(6) and (7) of the Act, 29 U.S.C.A. § 152(6), (7), and whether in fact and in law questions affecting commerce have arisen concerning the representation of employees, as the Union's petition for certification alleges. In the course of this investigation the Board will discover and weigh appellants' arguments that these employees are not engaged in any banking or commercial function; that they are responsible to the Commissioner of Police of the City of Chicago; that their activities are confined to the premises; and that

Lofther v. First Nat. Bank of Chicago, 7 Cir., 138 F.2d 299; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; and Convey v. Omaha National Bank, 8 Cir., 140 F.2d 640, among other cases, compel the conclusion that no question affecting commerce has arisen herein.

Appellants next contend that the petition filed with the Board is defective so that it did not confer jurisdiction on the Board to conduct any proceedings or issue subpoenas. The petition does not appear to be defective, and we cannot agree that the notice of hearing and all acts based on the petition were void. Appellants' contention that there is no allegation that a question concerning representation affecting commerce has arisen is expressly refuted by the amended petition which alleges that the employer's refusal to bargain collectively until there is a certification by the Board is "a question affecting commerce within the meaning of said Act." Appellants' denial of the existence of any such question raised an issue to be tried and determined by the Board. The same goes for the appropriateness of the bargaining unit, the bank's engaging in interstate commerce, and proving that the Union is a labor organization within the meaning of the Act. We conclude that the petition was sufficient to give the Board jurisdiction to launch an investigation to find out whether it had jurisdiction.

Many of the same attacks that are made on the petition are made against the application for the order to enforce compliance with the subpoenas. But the application clearly sets forth the Board's statutory authority for asking for the subpoenas, namely, §§ 9(c), 11(1) and 11(2) of the Act, and it was the plain intendment of the application that the bank could be investigated under the authority granted by those sections. Moreover, the petition was attached as an exhibit and made a part thereof. Hence the Board informed the court of the basis of its request for aid in carrying out the investigation. In urging that the ultimate facts had to be alleged in order to give the court jurisdiction, appellants ignore the admitted fact that the Board had no positive and conclusive information at the time it filed the application in the District Court that the bank was engaged in commerce within the definition of the Act. Indeed, the primary purpose of the sub-

poenas was to enable the Board to obtain the information on which to ascertain whether the bank *was* in commerce and to determine the other ultimate questions which appellants say should have been alleged prior to investigation. Adopting appellants' contention would be to sanction pre-judgment without obtaining the facts— a doctrine foreign to our jurisprudence.

Appellants also contend that no facts are stated in the application to warrant court action. Here, again, we reiterate that the function of these subpoenas was to bring to light the facts necessary for the Board to make a determination. Furthermore, a reading of the application and the exhibits attached thereto discloses that the known facts were set out in such manner as fully to apprise appellants and the court of the nature of the controversy and proceeding. The hearing before the trial examiner and before the court did not find appellants unprepared or groping in the dark for the nature of the controversy.

In contrast to the situation disclosed in many authorities cited by appellants the instant situation does not present an adversary proceeding after all the facts are available, but on the contrary, involves a preliminary investigatory proceeding instituted to discover facts which in the Board's opinion are necessary to arrive at a decision on the issues at stake. Undoubtedly full judicial review of the Board's ultimate conclusions is necessary, and the Board does not contend otherwise.

■ In contending that the subpoenas duces tecum are so broad as to be fishing expeditions in contravention of the Act and the Fourth and Fifth Amendments to the Constitution of the United States, as being an unreasonable search and seizure, appellants rest their arguments on several grounds. They assert that banks are exempt from the Board's visitorial power under the National Banking Act, 12 U.S.C.A. § 484, under a provision reading:

"No bank shall be subject to any visitorial powers other than such as are authorized by law, or vested in the courts of justice or such as shall be or shall have been exercised or directed by Congress, or by either House thereof or by any committee of Congress or of either House duly authorized,"
and under a similar provision in an Illinois statute, Ill.Rev.Stat.1943, Chap. 16½, § 8. Their assertion is untenable, because the Board's action falls within the meaning of the stated exceptions in the statutes, that is, visitorial powers "authorized by law, or vested in the courts of justice or such as shall be or shall have been exercised or directed by Congress, * * *." We agree that the courts are not mere rubber stamps and that subpoenas are in the District Court's discretion, but we fail to see how that helps appellants. It seems to us to have the opposite effect, for here the court after a very thorough and careful inquiry granted the Board's request for enforcement. Thus appellants are in the unenviable position of sustaining the great burden of showing an abuse of discretion. They have failed to do so. The facts of the case insofar as the Board knew them at the time of the application and the materiality of the evidence sought were brought out before the trial judge, who concluded that the documents which the Board wanted to be produced were relevant. We are not willing to disturb his holding, because we do not think any abuse of discretion was involved. The terms of the subpoenas were not unlimited, and the records were particularized to such records as would show certain specific information. Hence they did not amount to a fishing expedition; rather, they specified with as much precision as was fair and feasible the records to be examined and the information to be obtained from such records.

■ Because of the limitations placed on the order, we are far from convinced that the "essential business of the bank and of its customers will be interfered with and confidential information subjected to public scrutiny." Thus his opinion stated that the "order requiring compliance with the subpoena should provide a convenient method of compliance, one which will not interfere with the business of the bank," and "in so far as the bank will permit inspection of the books and papers at its place of business it need not be required to produce them before the Examiner."

■ The Board has cross-appealed from the limitations placed on the subpoenas by the court, namely, those portions of the court's order which read: "provided that respondent bank shall be required hereunder to bring with it and produce at any single time only such of said books, records, correspondence and documents as will not unduly interfere with the operation of its banking business, and may, upon the adjournment of any session of any such hear-

ing, return all of said books, records, correspondence and documents to its place of business in the City of Chicago; and provided further that if respondent bank will permit an inspection by applicant of its said books, records, correspondence and documents at its place of business in Chicago, Illinois, it need not be required to produce the same before said examiner." Such limitations are pre-eminently justified and clothed in common sense. The Board's argument in favor of its cross-appeals leaves us unimpressed. To say that this limitation "leaves to the election of a party rather than the public's representative whether the records shall be produced at the hearing held pursuant to the Act," as the Board does in its brief, may be true in a literal sense, but ignores the fact that the information must be produced. Moreover, the court is as truly the public representative as the Board, and the limitation is purely formal, being motivated by considerations of convenience and expeditious administration of justice. Since the facts, figures, and information must be forthcoming, to contend that the Board's power to exercise its quasi-judicial function is thereby impaired is wholly unjustified.

■ The Board's argument that "since no provision is made for copying in the event of inspection, it is impossible to gather any accurate information for the record," is utterly unpersuasive. There is no showing whatever that the Board made any effort to work with counsel for appellants in an attempt to stipulate that the Board might copy such records. Certainly when dealing with counsel of as high standing as counsel for appellants, that would have been the proper, sensible, and practical solution. Since appellants' counsel stated on oral argument that they thought a reasonable interpretation of the order would carry that power along with it, the Board's cross-appeals seem most unnecessary. Moreover, if the Board feared that it would be prevented from copying the records inspected, it could have sought a modification of the order in the District Court to include that power, but it failed to do so. Even though the Board's strictly literal interpretation may be technically correct, it is almost unimaginable that the Board would have been prevented from taking down the information in memoranda or otherwise from the books and records of appellants even without further action of any sort.

The District Court's limitations on its order represent a wise and thoughtful exercise of judicial discretion. We conclude that the Board's cross-appeals are devoid of merit.

Both the Board and appellants have made a few other arguments and have cited certain other authorities. These we have considered, but they do not alter our conclusions.

The orders are affirmed.