500

NATIONAL COUNCIL OF RY. PATROL-
MEN'S UNIONS, A. F. OF L., et al. v.
SEALY et al.

No. 11284.

Circuit Court of Appeals, Fifth Circuit.
Dec. 13, 1945.
Rehearing Denied Feb. 18, 1946.

Wm. E. Stone and Louis J. Dibrell, both of Galveston, Tex., for appellants.

V. W. McLeod and Ballinger Mills, both of Galveston, Tex., for appellees.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The National Council of Railway Patrolmen's Unions, and its Local 23228 of Galveston, Texas, and the officers of the Local, petitioned the District Court for a mandatory injunction to compel the respondents, now appellees, as the Board of Trustees of Galveston Wharves, being a carrier subject to the Interstate Commerce Act, to recognize and treat with the Union as "the duly accredited representative of the patrolmen in the Police Department of Galveston Wharves" pursuant to a certificate made by the National Mediation Board under authority of the Railway Labor Act, 45 U.S.C.A. §§ 151 and 152. The answer contended that the Board was a mere agency or department of the City of Galveston, and the patrolmen were officers of the City in its governmental capacity, and that the City and the patrolmen were not subject to the jurisdiction of the National Mediation Board, and that what was asked would be an interference by federal authority with the governmental functions of the City and of the State of Texas in violation of the Tenth Amendment of the Constitution of the United States.

The evidential facts were not in dispute. The District Court after stating them held that the Court had jurisdiction to grant

the relief if the patrolmen were within the coverage of the Act; and that while Virginian R. Co. v. System Federation No. 40, 4 Cir., 84 F.2d 641, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L. Ed. 567; California v. Latimer, 305 U.S. 255, 257, 59 S.Ct. 166, 83 L.Ed. 159, and California v. Anglin, 9 Cir., 129 F.2d 455, threw light upon the coverage of the Act when the carrier is a State or a municipality, they did not control under the present facts. It was held the patrolmen were not carrier employees within the meaning of the Act, but were police officers of the City of Galveston and not subject to the provisions of the Act. From a judgment refusing an injunction and dismissing the petition this appeal is taken.

■ We are of opinion that the status of these patrolmen is so doubtful that the Mediation Board should not have undertaken to pass judgment upon it, as it did do in granting its certificate of designation of the bargaining representative; and that the question ought to have been referred to the Interstate Commerce Commission in the first instance. Section 2, Fourth, of the Railway Labor Act, 45 U.S.C.A. § 152 Fourth, declares: "Employees shall have the right to organize and bargain collectively through representatives of their own choosing." Section 2, Ninth, 45 U.S.C.A. § 152 Ninth, gives the Mediation Board the power to ascertain and designate the bargaining representative, "If any dispute shall arise among a carrier's employees as to who are the representatives of such employees." Section 1, Fifth, 45 U.S.C.A. 151 Fifth, says: "The term 'employee' as used herein includes every person in the service of the carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission now in effect, and as the same may be amended or interpreted by orders hereafter entered by the Commission pursuant to the authority which is hereby conferred upon it to enter orders amending or interpreting such existing orders." It is quite apparent that not every person in the service of a carrier, though subject to its continuing control and authority, is an "employee"; but only those who perform work defined as that of an employee by existing or amended orders of the Interstate Commerce Commission; and the authority thus to define employees is not vested in the Mediation Board or in the courts, but in the Commission; and it is given express authority to amend and interpret its orders on the subject. The Commission has a similar function in determining who are "carriers" under the Act in Section 1, 45 U.S.C.A. § 151. The answer denies that these patrolmen are employees under the Act. The record contains no order or interpretation by the Commission applicable to their work. The brief of appellees denies that any such exists. The brief of appellants refers us to none, if we might judicially notice it. The appellants had the burden, and did not in this respect carry it.

It appears that the City of Galveston in 1940 acquired the Galveston Wharves, five miles of waterfront with many piers and warehouses, served by a system of terminal railway tracks aggregating forty or fifty miles, with locomotives and other usual railroad equipment, which hauled freight between the ships at the wharves, or the warehouses, and interstate railroads which enter Galveston. The wharves, warehouses and most of the tracks are enclosed by a fence, and trains and persons enter through gates. Some seventy or eighty patrolmen are employed by day and night to guard and serve the gates, and throughout the area to watch out for fire and for the safety of persons and property. They are selected in the first instance by the General Manager of the wharves, who acts under the Board of Trustees, but each patrolman, under a general City ordinance on this subject, must in writing apply to the Board of Commissioners of the City of Galveston, presenting not only the recommendation of the Board of Trustees, but also one from the Police and Fire Commissioner of the City, and must give a bond to the City and take an oath, as regular city policemen do, and if he is acceptable a certificate is issued by the city to him of his appointment as a special officer at Galveston Wharves pursuant to the ordinance. The ordinance provides that he "thereafter shall have the power and authority of a regular police officer of the City of Galveston only in and at such place of business and institution and within the boundaries named in such recommendation, but in no other place, and

such special policeman or watchman shall have no authority and shall not be permitted to carry arms while not on duty in and at such place of business and institutions." The ordinance further provides that such special policemen shall be paid by the person requesting the appointment, and shall be subject to removal by the Board of Commissioners of the City of Galveston at any time; and while on duty "shall be subject to the rules and regulations of the police department of the City of Galveston and all ordinances of the City of Galveston relating to the management and control of such (police) department."

We need not detail the status of the Board of Trustees under the City's charter. The Mayor is ex officio one of them. We think they are an agency of the City in charge of this railway and wharf terminal business. It is conceded as respects the railroads they are a carrier within the meaning of the Railway Labor Act. The question is whether these patrolmen, nominated by the Board and paid by them as the City ordinance respecting special policemen requires, and in practice discharged by them, are doing work defined by the Commission as that of railway employees. Unquestionably they do work of assistance to the railroad business, but it is similarly of assistance to the wharf and warehouse business over which we understand the Commission exercises no authority. It is also true that by virtue of applying to the City as a municipality, for appointment as a special police officer, taking oath and giving bond and receiving a certificate of appointment as such, with the same duty and authority in a limited portion of the City that a regular policeman has, each becomes an officer of the City of a kind that federal regulation would not ordinarily reach. Whether it can constitutionally do so we need not decide The function of the State as to such special policemen is discussed in Lehon v. Atlanta, 242 U.S. 53, 37 S.Ct. 70, 61 L.Ed 145. Our judgment is that it has not been shown that by any order or interpretation the Commission has declared that this complex and mingled service operates to make these men employees of this railway carrier under the provisions of the Railway Labor Act.

The judgment refusing a mandatory injunction is therefore affirmed.