**UNITED STATES of America,
Appellant,**

v.

**Houston H. FEASTER, Individually and as Director, Alabama State Docks Department, et al., Appellees.**

No. 20798.

United States Court of Appeals
Fifth Circuit.
April 20, 1964.
Rehearing Denied May 28, 1964.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Alan S. Rosenthal, Barbara W. Deutsch, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., for appellant.

Willis C. Darby, Jr., Mobile, Ala., Robert P. Bradley, Asst. Atty. Gen., Montgomery, Ala., Richmond M. Flowers, Atty. Gen., of the State of Alabama, for appellees.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and CARSWELL, District Judge.

TUTTLE, Chief Judge.

This is an appeal from a dismissal by the trial court of an action by the United States seeking an injunction to restrain the individual appellees and the state of Alabama, acting through them, from

barring access of the National Mediation Board to certain books and records of the Alabama Docks Department. In addition to the restraint sought, the United States prayed that a mandatory injunction require the named individuals to make the books and the records that are requested available to the National Mediation Board.

The facts can best be understood with a recitation of the statutory background of the case. Section 2, Ninth, of the Railway Labor Act, 45 U.S.C.A. § 152, Ninth, provides that the National Mediation Board, a creature of the Act, is to settle representation disputes among carrier employees. In the area of representation disputes, the coverage of the Act is set forth in two definitional sections. The term "carrier" is defined in Section 1 of the Railway Labor Act to include all carriers by railroad subject to the Interstate Commerce Act and "any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service * * * in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling property transported by railroads * * *." 45 U.S.C.A. § 151, First.

The term "employee" as defined in the Act, "includes every person in the service of a carrier * * * who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission now in effect, and as the same may be amended or interpreted * * * by the Commission." 45 U.S.C.A. § 151, Fifth.

In fulfillment of its statutory duty to settle representation disputes, the Board is authorized to investigate the underlying facts of the dispute and, for that purpose, to have access to any books and records of the carrier, deemed pertinent by the Board.[1]

The facts are relatively simple. The Alabama State Docks Department is an executive agency of the state of Alabama, which operates the state owned dock facilities. Certain of these facilities are at Mobile, Alabama, and include a terminal railroad subject to the Interstate Commerce Act, warehouses, a grain elevator, a cold storage plant and a cotton compress and bonded warehouse. All of these facilities are owned, operated and controlled by the state through the State Docks Department. Appellee Feaster, as Chief executive officer of the Department, is vested with all the powers and authority of the Department. Appellee Irvine, is general manager of operations of the Department. As of 1958, the National Mediation Board, pursuant to Section 2, Ninth, of the Railway Labor Act, had certified duly designated representatives for certain of the employees of the State Docks Department Terminal Railroad.

In 1959, the International Brotherhood of Firemen and Oilers, Helpers, Roundhouse and Railway Shop Laborers filed an application with the Board requesting an investigation of a representation dispute among all of the employees of the Department of Mobile except officers of the Department, office clerical employees and employees in the crafts covered by the existing agreements. Thereupon, the Board requested that appellants be permitted to examine those books and records of the State Docks Department which contained the names, addresses and job classifications of the employees involved in the dispute and requested that the appellees furnish the Board with a list containing the required information. Appellees refused to permit the Board to examine the records and refused to furnish the requested information. Thereupon, the suit was filed.

1. "The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph." 45 U.S.C.A. § 152, Ninth.

The defendants moved to dismiss the complaint on the grounds, (1) the district court had no jurisdiction to entertain the action; (2) the complaint failed to state a claim against any of the appellees upon which relief could be granted; (3) the complaint was an attempt to obtain an original writ of mandamus which the district court had no jurisdiction to grant. Without indicating the basis for its order, the district court granted the motions to dismiss on April 23, 1963. This appeal followed.

■■ The first question which presents itself on a consideration of this appeal is whether a cause of action exists in favor of the United States against the officers and against the state of Alabama by virtue of the authorization given to the Mediation Board under the provisions of the Interstate Commerce Act.

The State argues that no such cause of action exists. It says, first, that this is a suit in the nature of a petition for writ of mandamus and that it must, therefore, fail because a writ of mandamus has been abolished by the Federal Rules. The simplest answer to this contention is that this is not such a suit. It is a suit to prohibit officials who have custody of certain records, alleged to be records of a "carrier," who, under the circumstances alleged in the complaint, are required to make them available to the Mediation Board, from obstructing rights granted by statute. The law is plain:

> "The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph."

The fact, if it be true, as alleged by the appellees, "that Feaster and Irvine have no personal interest in the books and records or in the outcome of the purported controversy," is of no significance. They are the persons who, the Government alleges, are resisting the right of the Board to carry out the Congressional mandate. The district court has the power to consider the complaint and if it determines that these defendants are, in fact, in custody of the records, it has the power to enjoin their conduct which denies the access to them which Congress provides the Mediation Board shall have.

■ The appellees next argue that the complaint fails to set forth a "judiciable" controversy. This argument seems to be based upon the theory announced by the appellees that "administrative agencies do not have the inherent power to require persons to produce documents." Appellees then point to the fact that Congress did not give the Mediation Board subpoena powers and they deduce from this that Congress did not intend that the language quoted above was meant to be enforced by an original proceeding brought by the United States.

We think the absence of subpoena power and the absence of a specific enactment in the statute providing that the United States or the Board may file suit to enforce the Board's right to access to the records is not dispositive of the case. The Supreme Court has held heretofore in Steele v. Louisville & N. R.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, that even "an implied" statutory right of Negroes to be fairly represented by the certified bargaining representative of their craft could be enforced by injunction, although the statute gave no specific remedy of this nature. Also, in Virginian R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, the Court held that a statutory requirement that the carrier recognize the chosen representative of employees was enforceable by injunction, although no specific right of injunction was stated in the Act.

■ It is next contended that such an action could not be constitutionally supported because "it is not a case within the meaning of Section 2 of Article 3 of the Constitution which confers judicial power on the federal courts, for no claim of plaintiff is 'brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of

rights, or the prevention, redress, or punishment of wrongs.'" As to this point, we conclude that Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047, settles the law for the proposition that a proceeding to enforce an order for the production of books and records is a case or controversy under Article 3 of the Constitution.

■ The final and most substantial argument presented here by the appellees runs along these lines: The Railway Labor Act defines "employees" as every person in the service of a carrier "who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission." The complaint alleges that the Board desires access to the books and records of the state of Alabama, which show the names, addresses and job classifications of the employees of the Department to enable it to determine whether the persons employed by the Department are employees as defined in certain orders of the Interstate Commerce Commission. The Board does not have authority to make any such determination, but such authority is vested exclusively in the Interstate Commerce Commission.

This argument is fallacious since it reads the complaint as asserting the right of the Board to *define* certain work "as that of an employee or subordinate official," which right is clearly given exclusively to the Interstate Commerce Commission, rather than the right to *determine* whether the particular persons employed by the appellees are actually *performing* "work defined as that of an employee * * * in the orders of the Interstate Commerce Commission." The Board does not claim the right to determine that certain work is or should be railroad employee work; that is the function of the Interstate Commerce Commission. It does claim the right to consider the job classifications of certain designated employees and determine whether it considers that they are performing work which the Interstate Commerce Commission orders have theretofore designated as falling within carrier employment.

If the Mediation Board is to perform its duty under the Railway Labor Act at all, it has the right to ascertain initially whether the persons in the employment of a carrier fall within the orders of the Interstate Commerce Commission. It is not required to defer its proceedings and submit to the Interstate Commerce Commission for determination the question whether certain designated employees are or are not within the classifications covered by orders of the Commission. Nothing in the case of National Council of Railway Patrolmen's Union A. F. of L. v. Sealy, 5 Cir., 152 F.2d 500, is in conflict with this. That case grew out of an effort by a group of employees who sought to have the Court determine that the work they were doing should properly be "*defined* as that of an employee or subordinate official of a carrier when the Interstate Commerce Commission had issued no order touching the kind of work there being performed." (Emphasis added.) This Court merely affirmed a judgment of the district court contrary to the contention that the work there should be so classified.

■ Appellees further contend that the failure of the complaint to allege that "the Interstate Commerce Commission has determined that the Alabama State Docks Department is a 'carrier,'" is fatal because, they say, there must be a prior determination by the Interstate Commerce Commission of the carrier status of the employer of the specific employees as to whom the records are sought before this proceeding can go forward. We think this contention is without any substance. The complaint alleges that "Alabama State Docks Department is a carrier within the meaning of the Act." The Act itself defines a carrier as including "any express company, sleeping-car company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad, and

which operates any equipment or facilities or performs any service (other than trucking services) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad * * *."

We find no basis for the contention by appellees that there must be a prior determination by the Commission that the particular part of the function performed by the appellees here constitute them a "carrier" before this action can be brought. The allegation of carrier status is subject to proof just like any other allegation in the complaint. If it is proved, then the appellees are required to make the records available as sought in the complaint.

The judgment is reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.