**UNITED STATES of America,**
**Appellant,**

v.

**Houston H. FEASTER, individually and as Director, Alabama State Docks Department et al., Appellees.**

No. 23136.

United States Court of Appeals
Fifth Circuit.

March 29, 1967.

Rehearing Denied June 13, 1967.

Vernol R. Jansen, Jr., Mobile, Ala., Alan S. Rosenthal, Robert V. Zener, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., for appellant.

Willis C. Darby, Jr., Mobile, Ala., Robert P. Bradley, Asst. Atty. Gen., Montgomery, Ala., Richmond M. Flowers, Atty. Gen., for appellees.

Edward J. Hickey, Jr., Washington, D. C., James L. Highsaw, Jr. (amicus curiae), William G. Mahoney, William J. Hickey, Washington, D. C., for intervening appellant International Brotherhood of Firemen and Oilers, Helpers, Roundhouse and Railway Shop Laborers, Mulholland, Hickey & Lyman, Washington, D. C., of counsel.

Before RIVES, GEWIN, and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This eight-year-old case is before us for the second time. In United States v. Feaster et al., 330 F.2d 671 (5th Cir., 1964) we held that the complaint of the United States seeking an injunction against the Alabama State Docks stated a cause of action, and reversed and remanded. On remand the District Court denied the motions of the United States for summary judgment and for a preliminary injunction.

From the order denying the preliminary injunction the United States has appealed under 28 U.S.C.A. § 1292(a). Unable to appeal the denial of summary judgment, the United States seeks to use this § 1292(a) appeal to obtain judicial determination that the Alabama State Docks Department is a carrier within the meaning of the Railway Labor Act (45 U.S.C.A. § 151 et seq), contending that the undisputed facts as shown by the State's answer and the government's motion for summary judgment establish that the State is a carrier. The State seeks to escape making its records available to the National Mediation Board as provided by 45 U.S.C.A. § 152, Ninth, on the ground it is not a carrier and says the same facts relied on by the United States established it is not a carrier.

It is our opinion that the courts may not at this time properly make a determination of the ultimate question whether the State is or is not a carrier, but that under appropriate standards of judicial review the Mediation Board is entitled to access to the records and to an order of the District Court granting the same.[1]

---

[1.] Nor does the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., provide a basis for such review. As a general rule, a certification by the Board is not subject to review under the Administrative Procedure Act. E. g., Kirkland v.

One of the basic purposes of the Act is to insure "prompt and orderly settlement" of labor disputes. 45 U.S.C.A. § 151a. "There was to be no dragging out of the controversy * * *" Switchmen's Union v. National Mediation Board, 320 U.S. 297, 305, 64 S.Ct. 95, 88 L.Ed. 61, 66 (1943). The very section here involved requires the Board to complete its investigation and certify an employee representative within 30 days after its services are invoked. 45 U.S.C.A. § 152, Ninth. After eight years the Board has been able to progress only to a determination by it, successfully frustrated to date, that it has jurisdiction to make an investigation.

The District Court had before it the question of the scope of review, if any, when the Board, having administratively determined that the State is a carrier, seeks the assistance of the District Court to obtain records of the State to carry out the required investigation.[2]

■■ It is our opinion that when the Board affirmatively seeks judicial aid as it does here the court is not wholly without power to scrutinize the request. The matter then becomes one of articulating the limits of the court's power to look behind the bare request. The Act gives no subpoena power to the Board; its right to reach records is that given by the last sentence of § 152, Ninth: "The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph." But the situation is analogous to subpoena cases. Where an administrative agency issues an authorized subpoena if not honored it must call on a court for an order to enforce it. Here the agency has made demand for access to the records, and it not being honored calls on the court to enforce its authority under the statute to reach the records.

■ In subpoena cases the Supreme Court has rejected claims that the court must satisfy itself that probable cause exists for the agency's contention that the subject of the subpoena is covered by the statute; the only judicial inquiry to be made in enforcing an agency subpoena is whether the evidence sought is "plainly incompetent or irrelevant to any lawful purpose" of the agency. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509,

Atlantic Coast Line R. Co., 83 U.S.App. D.C. 205, 167 F.2d 529 (1948) [holding that the Act, as interpreted in Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), precluded review within the meaning of 5 U.S.C.A. § 1009.] Cf. Air Line Dispatchers Ass'n v. National Mediation Board, 89 U.S. App.D.C. 24, 189 F.2d 685, cert. denied, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951). Also, the Board's demand for access to the appellee's records and its internal determination of carrier status are not "final agency action" within the meaning of 5 U.S.C.A. § 1009(a). § 1009 is "merely * * * a declaration of existing law where judicial review is provided." Atchison, Topeka and Santa Fe Ry. Co. v. United States, 130 F.Supp. 76 (E.D. Miss.) cert. denied, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955). "Finality" for purposes of § 1009(a) is determined by application of the traditional tests of ripeness for review. E. g., Lam Man Chi v. Bouchard, 314 F.2d 664 (3rd Cir., 1963).

2. The question is not presented whether at this administrative stage the State could obtain any kind of judicial review of the Board's determination that it is a carrier by affirmatively seeking equitable relief from the courts based on Board action in excess of its statutory authority or in violation of procedural due process. See Brotherhood of Railway and S.S. Clerks etc. v. Association for Ben. of Non-Contract Employees, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); Boire v. Miami Herald Publishing Co., 343 F.2d 17 (5th Cir., 1965) [discussing Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)]. As a general rule "[A]dministrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." Chicago & S. Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948) and cases therein cited.

63 S.Ct. 339, 87 L.Ed. 424, 429 (1943). See also Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Tobin v. Banks & Rumbaugh, 201 F.2d 223 (5th Cir.), cert. denied, 345 U.S. 942, 73 S.Ct. 832, 97 L.Ed. 1368 (1953). In NLRB v. Northern Trust Co., 148 F.2d 24 (7th Cir., 1945), an NLRB subpoena case, the court declined to permit an employer to question whether he was engaged in interstate commerce and whether his activities affected commerce.

■ The record contains adequate evidence to support the right of the Board, at this stage, to see the records over the objections of the State. The "proof" of carrier status referred to in the opinion on the first appeal is not "proof" reaching the standard of burden of proof in trial of a civil case at issue, but "proof" sufficient to show that the Board in asking for records, is not making a demand incompetent and irrelevant to its lawful purposes. Before filing suit for injunction the Board made some investigation of the matter of possible carrier status; it postponed its investigation of the representation dispute to give the State an opportunity to present by written statements and briefs its position that it is not a carrier, and for representatives of the State to confer with the Board in Washington.[3] Both sides presented additional factual data to the District Court in affidavit form, in support of and in opposition to, the motion for summary judgment.

In making a determination that the Board has submitted proof sufficient to show that its action was not incompetent or irrelevant to its purpose, and not arbitrary, capricious or without foundation, we do not determine or indicate any opinion upon whether the State is or is not a carrier within the Act, nor upon any of the other claims and defenses asserted by the State.[4]

---

3. The State has, at all stages, objected to the Board's making a determination of carrier status without a hearing. The Board acts more in the capacity of a refferee; there is no requirement of a hearing at any stage of the matter. The Board does not enter orders, and its only ultimate finding of fact is the certificate. Switchmen's Union of North America v. National Mediation Board, supra. Cf. Brotherhood of Railway & Steamship Clerks v. Non-Contract Employees, supra, 380 U.S. at 662, 85 S.Ct. at 1198: "[T]he Board's duty to investigate is a duty to make such investigation as the nature of the case requires. An investigation is 'essentially informal, not adversary'; it is 'not required to take any particular form.' * * * Congress has simply told the Board to investigate and has left to it * * * the methods and procedures which it should employ in each case."

4. Nor is there before us any question of the scope of, or procedural circumstances in which there may arise, judicial review after certification by the Board, if issued. Without attempting definitive review of all authorities we make the following observations.

A certified bargaining representative may obtain an injunction to require a carrier to bargain. Virginian Railway Company v. Systems Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 597, 81 L.Ed. 789 (1937). [Whether the Board or the United States may seek such an injunction is not clear; see Judge Brown's dictum in United Industrial Workers of Seafarers, etc., v. Board of Trustees, 351 F.2d 183, 190 (5th Cir., 1965).] In Switchmen's Union of North America v. National Mediation Board, supra, the Court specifically noted that it had not determined the review, if any, available when an equity court is asked for affirmative help in the form of a decree to enforce a certification. But see Aeronautical Radio, Inc., v. National Mediation Board, 255 F.Supp. 466 (D.D.C., 1966), where an employer sued to set aside an election and the Teamsters intervened asking an order requiring the employer to bargain. On a factual showing that of 400 employees 174 had voted for the Teamsters but 179 had not voted at all, the court held that although it had no power to set aside the certification, it could, since its assistance was sought by way of a decree in equity, decline its aid on equitable considerations.

This Court reviewed the scope of the Board's authority to determine whether plaintiffs were "employees" within the Act in National Council of Railway Patrolmen's Union, A. F. of L., v. Sealy, 152 F.2d 500 (5th Cir., 1945), a suit by the certified union for injunctive relief to

We are mindful that the merits of a controversy ordinarily are not to be determined by appeal from an order denying a temporary injunction. However, the merit of this controversy is so narrow —not whether the State is a carrier but whether the Board has met the limited standard of proof required for access to the records—and the Board so clearly has met that standard, that it would achieve no purpose to remand for further hearing.

Reversed and remanded for entry by the District Court of an order granting to the Mediation Board access to the records.

require the carrier to bargain. Air Line Dispatchers Association v. National Mediation Board, 89 U.S.App.D.C. 24, 189 F.2d 685, cert. denied, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951) involved judicial review of a determination by the Board that it did not have jurisdiction. The Court distinguished cases where the issue was whether the Board had erroneously resolved a disputed representation case from situations involving the power of the Board to resolve the dispute. In several cases the courts have, after certification, reviewed claims that Mediation Board action has been in excess of its statutory powers, contrary to specific prohibitions of the Act, or in violation of procedural due process. International Brotherhood of Teamsters; etc. v. National Mediation Board, 124 U.S.App. D.C. 182, 363 F.2d 311 (D.C.Cir., 1963); Flight Engineers International Association v. National Mediation Board, supra; see also Leedom v. Kynes, supra (National Labor Relations Act). As to such review before certification; see Note 2, supra.

In Shields v. Utah, Idaho Central Railroad Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111 (1938) the Interstate Commerce Commission had. determined that the railroad was not an interurban electric railway within the proviso of § 151, First, after a hearing held at the request of the Mediation Board under the provisions of that section. The Supreme Court allowed the carrier to seek injunctive relief against criminal sanctions of the Act where certification had issued and the carrier had declined to post notices as required by the Act and as ordered by the Board. Sprague v. Woll,

GEWIN, Circuit Judge (Dissenting):

The question presented by this appeal is a narrow one. We are called upon to decide whether the trial court abused its discretion in reaching the conclusion that the case was not one in which a preliminary injunction should be issued. I find no abuse of discretion. Accordingly, I would affirm the action of the district court and remand the case to the district court for a hearing on the question of whether the State of Alabama is a "carrier" within the meaning of the Railway Labor Act, 45 U.S.C. § 151 First, with relation to the activities of the State in the operation of certain maritime facilities and whether em-

124 F.2d 767 (7th Cir., 1941) is a similar case. The court applied the standard of Shields—whether the ICC in arriving at its determination departed from the applicable rules of law and whether its finding had a basis in substantial evidence or was arbitrary and capricious—and held that question must be determined upon the evidence produced before the ICC. Texas Electric Railway Co. v. Eastus, 25 F.Supp. 825 (N.D.Texas, 1938), aff'd per curiam 308 U.S. 512, 60 S.Ct. 134, 84 L. Ed. 437 (1939) is a like case applying the same standard.

There is a suggestion in Switchmen's Union of North America v. National Mediation Board, supra, 320 U.S. at 306–307, 64 S.Ct. at 95, 88 L.Ed. at 61, that Shields may not apply to Mediation Board determinations of carrier status, for the Supreme Court emphasized that Shields dealt with review of ICC determination of a transportation question in which it had special competency. However, it also distinguished Shields on the ground it dealt with the traditional use of equity to enjoin criminal proceedings, a remedy which appears to this Court should be as available to a carrier whose status has been determined by the Mediation Board without hearing as to a carrier whose status has been determined by the ICC after hearing, especially so since such a Board decision is of a transportation-related problem but made without the expertise of the ICC in that field. On the general subject of procedure and judicial review under § 152, Ninth, see Comment, Procedure and Judicial Review Under Section 2, Ninth of the Railway Labor Act, 32 J. Air L. & Com. 249 (1966).

ployees in the maritime facilities of the State are employees within the meaning of the Railway Labor Act.

Under the sponsorship of a national policy to encourage water transportation declared by Congress in 1919, Rivers and Harbors Appropriation Act of 1919, 40 Statute 1275, 1286, the State of Alabama has been operating the Alabama State Docks at Mobile for almost 40 years. In connection with the operation, the Terminal Railway was created for the purpose of serving the maritime facilities of the State and to make such facilities "open to the use of all on equal terms." Such an arrangement eliminates the possibility that any privately owned railroad may monopolize the port facilities constructed by the State to encourage the use of water transportation facilities. The Terminal Railway not only serves the maritime facilities, it also serves private industries located on or adjacent to the property owned by the State in the vicinity of the maritime facilities.

There is no dispute as to the status of the employees of the Terminal Railway. It has long and consistently been recognized that the Terminal Railway is subject to the Railway Labor Act and the services of the mediation board have been used in labor disputes involving the Terminal Railway. It is admittedly a carrier within the meaning of the various acts of Congress regulating railroads.

Aside from the Terminal Railway, the maritime facilities consist of the Docks Department, Bulk Material Handling Plant, Grain Elevator, Cotton Compress and Warehouse, Cold Storage Plant, and Bulk Oil Plant. The present controversy relates to those employees of the several departments mentioned (not including the Terminal Railway) except officers of the State Docks Department, office and clerical employees, and employees who are covered by existing collective bargaining agreements pursuant to the provisions of the Railway Labor Act. All of the employees of the Terminal Railway are represented by unions certified under the Railway Labor Act.

The usual function of a preliminary injunction is to preserve the status quo pending a determination of the case on its merits. While there is no absolute standard by which the discretion of a trial judge is to be determined in granting or refusing a preliminary injunction, it is always his duty to balance the relative conveniences of the parties. The very nature of the question dictates the exercise of a broad, general discretion. The action of the district court should not be disturbed unless the record demonstrates a clear abuse of such discretion. Calagaz v. DeFries (5 Cir. 1962) 303 F.2d 588, 590; Bancroft & Sons Co. v. Shelley Knitting Mills (3 Cir. 1959) 268 F.2d 569; Miami Beach Federal Savings & Loan Assoc. v. Callender (5 Cir. 1958) 256 F.2d 410, 415; Jimenez v. Barber (9 Cir. 1958) 252 F.2d 550; Burton v. Matanuska Valley Lines (9 Cir. 1957) 244 F.2d 647, 650–651, 17 Alaska 298.

When this case was before us on the former appeal, United States v. Feaster, 5 Cir., 330 F.2d 671 (1964), we reversed and remanded to the district court under the following mandate:

"The allegation of carrier status is subject to proof just like any other allegation in the complaint. If it is proved, then the appellees are required to make the records available as sought in the complaint."

The "carrier status" issue is still unresolved. There is a complaint alleging that the employees of the maritime facilities are carrier employees and there is a denial of such status. The issue presented should not be decided by summary judgment procedure but there should be a full and complete hearing. This is especially true because the relief sought by preliminary injunction was not to preserve the status quo but rather to completely change it. Tanner Motor Livery Ltd. v. Avis, Inc. (9 Cir. 1963) 316 F.2d 804, 808–809. See also Switzerland Cheese Association, Inc., et al. v.

Horne's Market, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966).[1]

At a full hearing upon the merits, the conflicting contentions of the parties can be resolved. The issue presented is not entirely simple and a decision should be reached only after hearing the evidence. See Pan American World Airways, Inc. v. United Brotherhood of Carpenters & Joiners of America (9 Cir. 1963) 324 F.2d 217, cert. den. 376 U.S. 964, 84 S.Ct. 1122, 11 L.Ed.2d 982; Northwest Airlines v. Jackson (8 Cir. 1950) 185 F.2d 74; Walling v. Baltimore Steam Packet Co. (4 Cir. 1944) 144 F.2d 130; Allen v. Ocean S. S. Co. of Savannah (5 Cir. 1941) 123 F.2d 469.

---

1. In the Switzerland Cheese case the Court stated:

"It is earnestly argued however that, although this order denied a permanent injunction, it was nonetheless 'interlocutory' within the meaning of § 1292 (a) (1) *because the motion for summary judgment did service for a motion for a preliminary injunction* (see Federal Glass Co. v. Loshin, supra [2 Cir., 217 F.2d 936,] at 938) and that therefore 'interlocutory' must also include a denial of a permanent injunction.

"We take the other view not because 'interlocutory' or preliminary may not at times embrace denials of permanent injunctions, but for the reason that the denial of a motion for a summary judgment *because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim.* It is strictly a pretrial order that decides only one thing—that the case should go to trial." (Emphasis added)