**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**BROWN TRANSPORT CORPORATION, Defendant.**

**No. 85 C 7383.**

United States District Court, N.D. Illinois, E.D.

Oct. 30, 1985.

---

Sheryl Sternberg, Chicago, Ill., for plaintiff.

Jack Osswald, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

National Labor Relations Board ("Board" or, when cited in case names, "NLRB") has applied under National Labor Relations Act ("Act") § 11(2), 29 U.S.C. § 161(2),[1] for an order requiring Brown Transport Corporation ("Brown") to comply with Board's subpoena duces tecum (the "Subpoena"). For the reasons stated in this memorandum opinion and order, Board's application is granted.

### Facts [2]

Brown is a large motor carrier (with over 3,000 employees, and with over 25 terminals located around the country) engaged

---

**1.** All further citations to the Act will simply take the form "Section—," referring to the Title 29 numbering rather than to the Act's internal numbering. Regulations drawn from 29 C.F.R. will be cited "Reg. § —."

**2.** Brown raises purely legal rather than factual challenges to Board's application. None of the facts stated in the text is in dispute.

in the interstate (indeed nationwide) transportation of freight. In July 1984 it established a new terminal in Bedford Park, Illinois. It treated its existing collective bargaining agreement with Drivers Mutual Association, Inc. ("Association") as covering its Bedford Park employees as well.

Between November 23, 1984 and March 15, 1985 five unfair labor practice charges were filed against Brown (Ex. 1 [3]). Two of those charges were filed by individual employees Deborah King ("King") and Odell Neals ("Neals"), while competing union Local 710, International Brotherhood of Teamsters ("Local 710") filed the remaining three charges.

On February 1, 1985 Board issued a complaint ("Complaint I," Ex. 2) consolidating King's charge with those brought by Local 710. Complaint I charged Brown had:

    1. interrogated employees about their union activities, in violation of Section 158(a)(1) (Complaint I ¶ V);

    2. threatened to discharge employees who supported a union other than Association, in violation of Section 158(a)(1) (Complaint I ¶ V);

    3. threatened to close the Bedford Park terminal if the employees there chose a union other than Association, in violation of Section 158(a)(1) (Complaint I ¶ V);

    4. recognized Association as the bargaining representative of its Bedford Park employees before that union represented an uncoerced majority of those employees, in violation of Sections 158(a)(1) and (2) (Complaint I ¶ VI); and

    5. discharged George Witzel ("Witzel") because he supported Local 710, in violation of Section 158(a)(1) and (3) (Complaint I ¶ VII).[4]

On April 25, 1985 Board issued a complaint (Complaint II, Ex. 3) based on Neals' charge. Complaint II contained allegations against Brown similar to those included in Complaint I. On May 6, 1985 Board consolidated Complaints I and II (Ex. 4).

On June 28, 1985 Board issued the Subpoena (Ex. 7) to Brown, directing production of certain documents at a Board hearing. On July 3, 1985 Brown filed a petition to quash the Subpoena (Ex. 9). During the July 15, 1985 hearing, Administrative Law Judge Alprin ("ALJ Alprin" or simply the "ALJ") granted the petition to quash as to portions of the Subpoena but refused to revoke the Subpoena entirely. Brown continues to refuse to comply with the surviving portions of the Subpoena.

### Brown's Contentions

Brown counters Board's application for enforcement of the Subpoena in three ways:

    1. This Court lacks jurisdiction to enforce a subpoena already limited by the ALJ.

    2. Documents called for by the Subpoena are irrelevant to Board's unfair labor practice case.

    3. Because the Subpoena is insufficiently particular, it is overly burdensome and hence unenforceable.

This opinion will consider each of those wholly unpersuasive arguments in turn.

### 1. Jurisdiction To Enforce the Subpoena

Board's power to issue subpoenas derives from Section 161(1), which also enables Board to revoke a subpoena after its issuance: [5]

---

**3.** Each citation to "Ex.—" refers to an exhibit attached to Board's application for enforcement of the Subpoena filed with this Court.

**4.** Local 710 had also filed unfair labor practice charges against Association. Board's Complaint I ¶¶ VIII and IX, which stem from those charges, allege Association violated Sections 158(a)(3), (b)(1)(A) and (b)(2). Because the present enforcement proceeding addresses only the subpoena issued to Brown, this opinion will not discuss the charges leveled against Association.

**5.** Board has delegated its power to revoke subpoenas to its administrative law judges under Reg. § 102.31:

    Such petition to revoke, if made prior to the hearing, shall be filed with the regional director and the regional director shall refer the petition to the administrative law judge or the Board for ruling.... The administrative law

The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing.

Section 161(2) expressly confers jurisdiction on district courts to enforce Board subpoenas:

In case of contumacy or refusal to obey a subpena issued to any person, any district court of the United States or the United States courts of any Territory or possession, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

Brown asserts Board cannot limit the scope of an already-issued subpoena but must—if the subpoena is flawed at all—revoke it in its entirety. Brown claims the ALJ's rejection of parts of the Subpoena operated to revoke the entire Subpoena. From that premise Brown reasons this Court has no jurisdiction to consider Board's application, because Brown has not refused to obey an "issued" subpoena.

■ Brown's contention is so lacking in merit as to be frivolous. Nothing in the statutory language even suggests, and not surprisingly Brown's counsel has adduced no authority that even hints, the partial invalidity of the Subpoena infects the remainder. Any such conclusion would require Board to issue a new subpoena every time an ALJ concludes any part of a subpoena is invalid as to any document or documents, opening up endless opportunities for a party to contest Board's subpoenas and thus to delay Board proceedings. Such an exaltation of form over substance would be both wasteful and—even more to the point—pointless. Absent a clear statutory mandate to that effect (and there is none), this Court will not embrace such a bizarre concept of its jurisdiction.

## 2. Relevancy

■ This Court has an extremely narrow scope of review of Board subpoenas in a

judge or the Board, as the case may be, shall revoke the subpena if in its opinion the evidence whose production is required does not relate to any matter under investigation or in question in the proceedings or the subpena does not describe with sufficient particularity the evidence whose production is required, or if for any other reason sufficient in law the subpena is otherwise invalid.

*NLRB v. Duval Jewelry Co. of Miami*, 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958) has upheld that delegation.

proceeding such as this. *NLRB v. Williams*, 396 F.2d 247, 249 (7th Cir.1968) (citations omitted) teaches:

> Duly issued subpoenas are to be enforced if the agency is seeking information "not plainly incompetent or irrelevant to any lawsuit purpose".... And, the essential requirement for both the issuance and enforcement of a National Labor Relations Board subpoena is that the production of the evidence or the giving of the testimony called for by the subpoena must relate to a "matter under investigation or question." The evidence or testimony sought must touch upon the matter under investigation or in question.

■ Brown urges it is called on to produce documents irrelevant to Board's unfair labor practice case by Subpoena ¶ 7:

> Any and all documents and records showing the names of all employees of Brown Transport Corp., a subsidiary of Brown Transport Co., Inc. who were terminated during their probationary period during the period from June 1, 1984 through March 1, 1985, including all written or oral warnings, reprimands, suspensions or terminations received by such employee during that same period.

Contrary to Brown's assertion, those documents relate directly to the allegations in Complaint I ¶ VII, which charges Brown discharged Witzel because he supported Local 710. Brown counters that charge by arguing Witzel was simply a probationary employee (Ex. 10(x)). Brown's procedures for terminating probationary employees such as Witzel thus become relevant to the inquiry whether Brown in fact terminated Witzel pursuant to those practices rather than for his activities on behalf of Local 710. Brown's other disciplinary activities may be relevant to a determination wheth-

er Witzel's termination was or was not for the prohibited retaliatory reason.

Brown also argues its termination procedures at facilities other than Bedford Park do not relate to the controversy surrounding Witzel's discharge. But similarities and differences between Brown's procedures at Bedford Park and at other terminals might shed light on the bona fides of Brown's justification for firing Witzel, especially because the records at Bedford Park—a newly opened terminal—would almost certainly be too scanty to substantiate Brown's procedures. ALJ Alprin noted (Ex. 10(h)) Brown had failed to offer any specific evidence showing why personnel practices at different terminals did not relate to the issue of Witzel's discharge. Brown's "bare assertion" of irrelevancy will not defeat enforcement of Board's subpoena. *NLRB v. Dutch Boy, Inc.*, 606 F.2d 929, 932 (10th Cir.1979).[6]

### 3. Burdensomeness

■ Under the principles announced in *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir.1982) (citations omitted, but quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C.Cir.1977)) this Court may restrict the Subpoena:

> where it would impose an unreasonable or undue burden on the party from whom production is sought.... The burdensomeness test finds its genesis in the Fourth Amendment, which prescribes that disclosure shall not be unreasonable.... "The burden of showing that the request is unreasonable is on the subpoenaed party ... [and] is not easily met where ... the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose."

---

**6.** Subpoena ¶ 7 requests documents "from June 1, 1984 to March 1, 1985." Complaint I was issued February 1, 1985. Brown therefore contends Board's subpoena requests information that does not relate "to any matter under investigation or in question" under Section 161(1). Brown's treatment of probationary status employees during the short period following the issuance of Complaint I, however, might illumi-

nate the nature of Brown's procedures during the time actually under investigation. Accordingly the post-Complaint I information sought is "not plainly incompetent or irrelevant to any lawful purpose." *Williams*, 396 F.2d at 249, quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943).

Brown argues it has met that burden of showing the subpoena is unduly burdensome, advancing three arguments toward that end:

1. To require Brown to respond to the Subpoena as modified by ALJ Alprin would put an unreasonable burden on Brown to determine the extent of the ALJ's revocation of the Subpoena.

2. Subpoena ¶¶ 3, 4, 5, 6, 11 and 13 fail to describe the evidence sought with sufficient particularity.

3. Compliance with the Subpoena "would require the production of thousands of documents and an army of personnel to locate" those documents.

None of those reasons withstands close scrutiny.

■ First, even a quick perusal of the transcript of the July 15, 1985 hearing reveals ALJ Alprin plainly dealt with Brown's petition to quash the Subpoena in this way:

1. He granted the motion to quash Subpoena ¶¶ 8, 9 and 10 (Ex. 10(i)), ¶¶ 12 and 14 (Ex. 10(j)) and ¶¶ 15, 16 and 17 (Ex. 10(m)).

2. He granted the motion to quash Subpoena ¶ 3 except as that request relates to Association (Ex. 10(d)).

3. He ruled documents called for in Subpoena ¶¶ 4, 5 and 6 had to be produced only as to alleged supervisory employees Pollard, Sailliez, Hausner and Sobieski (Ex. 10(f)–(g)).

4. He limited Subpoena ¶ 11 to require production of documents as to the effect of the opening of the Bedford Park terminal "upon driver personnel" (Ex. 10(i)).

5. He granted the motion to quash Subpoena ¶ 13 except as it required production of documents concerning staffing needs, job descriptions, transfer of personnel *and recognition of Association* (Ex. 10(j)–(k)).

6. He denied Brown's motion to quash Subpoena ¶¶ 1 and 2 (Ex. 10(b)) and ¶ 7 (Ex. 10(h)).

Brown's counsel appeared at and participated in the hearing before ALJ Alprin.

Brown cannot plausibly claim ignorance of the Subpoena requirements Board seeks to enforce.

■ Second, the language of the Subpoena is clearly not overly broad, given the nature of the underlying unfair labor practice charges. Board contends Brown's Bedford Park facility constitutes a separate appropriate collective bargaining unit, so Brown violated Sections 158(a)(1) and (2) by applying its existing collective bargaining agreement with Association to its Bedford Park employees. To determine whether Bedford Park constitutes an appropriate bargaining unit, Board must look to (*Towne Ford Sales and Town Imports*, 270 N.L.R.B. 311, 315 (1984)):

> bargaining history; the functional integration of operations; the differences in the types of work and the skills of employees; the extent of centralization of management and supervision, particularly in regard to labor relations, hiring, discipline, and control of day-to-day operations; and the extent of interchange and contact between the groups of employees.

Those inquiries necessarily involve an examination of Brown's structural organization.

*NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 133–14 (5th Cir.1982) upheld a similar Board subpoena:

> Although on a first reading some of the language in the subpoenas does seem fairly broad, we think that the problem lies not so much with "particularity" as with the nature of the underlying claims. In order to make these determinations, the Board must necessarily undertake a fairly wide-ranging investigation into the day-to-day affairs of the two companies.

Although Board's requests typically begin "Any and all documents ...," Board invariably continues (as it did here) by specifically itemizing the types of documents it seeks. Our Court of Appeals' rejection of a "particularity" claim in *NLRB v. Northern Trust Co.*, 148 F.2d 24, 29 (7th Cir.),

*cert. denied*, 326 U.S. 731, 66 S.Ct. 38, 90 L.Ed. 435 (1945) is equally applicable here:

> The terms of the subpoenas were not unlimited, and the records were particularized to such records as would show certain specific information. Hence they did not amount to a fishing expedition; rather, they specified with as much precision as was fair and feasible the records to be examined and the information to be obtained from such records.

Brown's particularity argument (like its others) must fail.

Brown's final contention focuses on the claimed burden of producing the subpoenaed documents. *EEOC v. A.E. Staley Manufacturing Co.*, 711 F.2d 780, 788 (7th Cir.1983) (quotation adapted to this case) states the applicable rule:

> The test this Circuit applies to determine whether a subpoena is too burdensome to be enforced is whether "... compliance would threaten the normal operation of [Brown's] business."

 On that score, at the hearing Brown's counsel simply stated (Ex. 10(y)):

> I am advised that it will take two people, two weeks to review the files to come up with that, at a cost to Brown in the area of $5,000.

Such an assertion is insufficient to establish burdensomeness. *NLRB v. United Aircraft Corp.*, 200 F.Supp. 48, 51 (D.Conn.1961), *aff'd mem.*, 300 F.2d 442 (2d Cir.1962) rejected a similar argument:

> The mere size of Respondent's operation is no excuse for its refusal to give information relative to unfair labor practices. It is presumed, by the very fact that Respondent has such a large number of employees, that it is sufficiently equipped to handle the records of its employees.

Brown offered no evidence showing compliance would threaten the normal operation of its business. Nor did Brown offer any affidavits to support its conclusory assertion to that effect. *Cf. EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981).

In sum, Brown has not come close to sustaining its own burden on the issue of burdensomeness. Its final position has also proved unsustainable.

### Conclusion

Brown has resisted Board's reasonable subpoena requests without reasonable justification. In the language of Section 161(2), it has been "guilty of contumacy [as well as] refusal to obey...." It is ordered to obey the Subpoena by:

1. appearing before ALJ Alprin at such time and place as he may designate;

2. there producing the records described in the Subpoena as modified by the ALJ's prior order; and

3. giving testimony and answering any and all questions relevant and material to the matters under investigation and in question in any of the Board proceedings referred to in this opinion.